**Virginia Hernandez FRIAS, Individually, and as Next Friend of Nicholas Brian Frias and Thomas Isaac Frias, George Anthony Frias, Jesse Valentin Frias, Steven Simon Frias, Carlos Jesus Frias, Christina Mejia, and Jose Manuel Galvan, as Representative of The Estate of Jesus Valentin Frias, Appellants,**

v.

**ATLANTIC RICHFIELD COMPANY, Lyondell Petrochemical Company, and Lyondell–citgo Refining Company, Ltd., Appellees.**

No. 14–97–01060–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 1999.

Rehearing Overruled Sept. 16, 1999.

Richard N. Countiss, John E. Williams, Jr., Jeffrey S. Thompson, Houston, for appellants.

Richard O,. Faulk, Houston, Allison Freeman Logan, Dallas, for appellees.

Panel consists of Justices YATES, EDELMAN, and DRAUGHN.*

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

This is an appeal from a summary judgment by the surviving family members of Jesus Valentin Frias, deceased. They brought suit against the former employers of Mr. Frias for workers' compensation benefits, wrongful death, intentional injury, negligence, and gross negligence. The trial court granted the employers' motion for summary judgment on the claims of intentional injury and gross negligence.

For clarity and narrative purposes, we will refer to the parties by their trial court designations: the surviving Frias family as "Plaintiffs" and the former employers as "Defendants." At trial, after their first amended motion for summary judgment was denied, Defendants filed a second amended motion, asserting that they were entitled to judgment as a matter of law on Plaintiffs' claims of intentional injury and gross negligence. The trial court granted Defendants' second motion for summary judgment without elaboration.[1] Plaintiffs assign two points of error on appeal. First, they contend that the trial court erred in granting summary judgment in favor of Defendants because, contrary to Defendants' summary judgment assertions, Plaintiffs were entitled to pursue causes of action for intentional injury and gross negligence because neither the Labor Code nor the Texas Supreme Court abrogated such causes of action. Second, Plaintiffs contend that Defendants failed to conclusively negate any element of their respective causes of action; and Defendants failed to conclusively establish all elements of any affirmative defense. In short, Plaintiffs contend that Defendants' summary judgment evidence did not satisfy the objective test for gross negligence by conclusively proving that their conduct did not create an extreme degree of risk, nor did they satisfy the subjective test by conclusively proving that they had no actual knowledge of the extreme risk of serious harm allegedly created by their conduct.

By cross-point, Defendants ask us to review the trial court's denial of their *first* amended motion for summary judgment. They contend that the trial court erred in denying their first amended motion for summary judgment because the federal Longshore and Harbor Workers' Compensation Act preempts the state tort remedies sought by Plaintiffs.

We reverse and remand.

---

* Senior Justice Joe L. Draughn sitting by assignment.

1. The parties entered into an agreement pursuant to Rule 11, whereby Plaintiffs agreed to non-suit all of their remaining claims against Defendants during the pendency of this appeal. *See* Tex.R. Civ. P. 11 (West 1999). The parties agreed that "[t]he dismissal will be without prejudice to the refiling of those claims after the appeal is resolved by final judgment in the highest court to which it is ultimately presented."

## I.  BACKGROUND

Jesus Valentin Frias was employed by Defendants from 1974 to 1994.  Mr. Frias was a marine dockman who loaded and unloaded shipping vessels, transferring cargo to and from his employers' refinery.  He died on August 9, 1994.  In their lawsuit, Plaintiffs alleged that Mr. Frias's death was due to aplastic anemia, caused by his exposure to benzene during the course of his employment by Defendants.

## II.  STANDARD OF REVIEW

The standards for reviewing a summary judgment are well-established.  The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Nixon v. Mr. Property Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex. 1985).  In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.  *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.  *Id.*

## III.  PROPRIETY OF SUMMARY JUDGMENT

### A.

■  We first address Defendants' contention that the trial court erred in denying their First Amended Motion for Summary Judgment.

■  Generally, a denial of a motion for summary judgment is not eligible for appellate review because it is not a final judgment.  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Insurance Co. of North America,* 955 S.W.2d 120, 125 (Tex. App.-Houston [14th Dist.] 1997, pet. denied) (citing *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996)).  There are, however, two exceptions to this general rule.  *Id.* When both parties file motions for summary judgment and the trial court grants one and denies the other, the denial may be appealed.  *Id.* An appeal from such denial is also proper when the denial is:  (1) based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state; or (2) based in whole or in part upon a claim against or defense by a member of the media, acting in such capacity, or a person whose communication appears in or is published by the media, arising under the free speech or free press clause of the First Amendment of the United Stated Constitution, or Article 1, Section 8 of the Texas Constitution.  *Id.* (citing TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5)–(6) (Vernon 1997)).

The trial court's denial of Defendants' First Amended Motion for Summary Judgment does not fall into any recognized exception to the general rule.  Defendants argue, however, that the Supreme Court's decision in *Cates* permits an appellate court to review a trial court's decision to deny a motion for summary judgment.  *See* 927 S.W.2d 623.  In *Cates,* the defendants moved for summary judgment on four separate grounds.  *Id.* at 624.  The trial court granted the summary judgment on two of the grounds presented and expressly denied the remaining grounds.  *Id.* The court of appeals reversed the summary judgment because the grounds upon which it was granted were insufficient.  *Id.* The court of appeals refused to consider whether the trial court erred in denying defendants' remaining grounds for summary judgment.  *Id.* On appeal to the Supreme Court, defendants argued that the court of appeals erred in refusing to consider whether their summary judgment grounds that were denied by the trial court could support the summary judgment.  *Id.* at 624–25.  The Supreme Court held that "rule 166a does not prevent an appellate court from affirming the judgment on other grounds the parties properly raised before the trial court, when the trial court grants summary judgment specifically on fewer than all grounds asserted."  *Cates,* 927 S.W.2d at 625.  Thus, the Supreme Court reversed the court of appeals' decision and remanded

the case to the court of appeals to consider whether the defendants' summary judgment grounds that were denied by the trial court could support the summary judgment. *See id.* at 627.

The case at bar is inapposite to *Cates.* Here, Defendants presented their "First Amended Motion for Summary Judgment" to the trial court upon the grounds that the federal Longshore and Harbor Workers' Compensation Act preempted the state tort remedies sought by Plaintiff. This motion was denied "in its entirety" by the trial court. Defendants then filed their "Second Amended Motion for Summary Judgment." The grounds alleged in this motion were that the Texas Workers' Compensation Act barred Plaintiffs' actions for gross negligence and intentional injury and that there was conclusive evidence negating at least one essential element of Plaintiffs' actions for gross negligence and intentional injury.[2] The trial court granted this motion, specifically stating "Defendants' Second Amended Motion for Summary judgment is GRANTED...."

■ Under these circumstances, "[a] substituted or amended motion for summary judgment supercedes and supplants the previous motion, which may no longer be considered." *State v. Seventeen Thousand and No/100 Dollars U.S. Currency,* 809 S.W.2d 637, 639 (Tex.App.-Corpus Christi 1991, no writ); *see also* TEX.R. CIV. P. 65 (West 1999) (unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as part of the pleading in the record of the cause); *Radelow–Gittens Real Property Mgmt. v. Pamex Foods,* 735 S.W.2d 558, 559 (Tex. App.-Dallas 1987, writ ref'd n.r.e.) (an amended pleading supercedes and supplants all previous pleadings). The grounds alleged in Defendants' Second Amended Motion completely replaced the grounds alleged in Defendants' first motion. *See id.* Unlike the situation in *Cates,* where all summary judgment grounds were properly before the trial court and ruled upon, here, Defendants failed to properly plead their earlier ground for summary judgment. We do not regard *Cates* as abrogating proper pleading in motions for summary judgment. *See* TEX.R. CIV. P. 166a(c) (West 1999). Consequently, the trial court's decision to deny Defendants' first motion for summary judgment is not eligible for appellate review. *See id.* Defendants' point of error overruled.[3]

**B.**

■ In their first point of error, Plaintiffs argue that the trial court erred in granting summary judgment in favor of

---

**2.** Defendants' Second Amended Motion for Summary Judgment did not incorporate the grounds stated in their First Amended Motion for Summary Judgment.

**3.** Assuming *arguendo* that Defendants' point of error concerning preemption of Plaintiffs' claims by the federal Longshore and Harbor Workers' Compensation Act (LHWCA) was eligible for review, we nevertheless conclude that their contention is without merit. *See* 33 U.S.C. § 901, *et seq.* (1986). This is because the deceased, assuming he was eligible for benefits under the LHWCA as a result of the nature of his employment, was an employee characterized as being within a "twilight zone" of jurisdiction between the LHWCA and the state workers' compensation system. *See Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 718, 100 S.Ct. 2432, 2435, 65 L.Ed.2d 458 (1980); *Roy v. Bethlehem Steel Corp.,* 838 F.Supp. 312, 316 (E.D.Tex.1993). Employees within this "twilight zone" may elect, at their option, to proceed under either LHWCA or the state workers' compensation system. *Sun Ship, Inc.,* 447 U.S. at 720–22, 100 S.Ct. at 2436–38; *Roy,* 838 F.Supp. at 316. Indeed, the LHWCA does not preempt state workers' compensation laws. *Id.* at 720–21, 100 S.Ct. at 2436–37. In this case, in seeking workers' compensation benefits, the record shows that Mr. Frias, the decedent, and Plaintiffs chose to proceed under the Texas Workers' Compensation system rather than the LHWCA. Thus, under Texas law, Plaintiffs' were entitled to pursue their independent tort remedies under state law for intentional injuries and gross negligence. *See id.; Roy,* 838 F.Supp. at 316–17; *see also* discussion, *supra.*

Defendants on the ground that the Workers' Compensation Act barred their causes of action for gross negligence and intentional tort.

■ Generally, the Workers' Compensation Act provides the exclusive remedy for an injured worker or his family to recover damages for work-related injuries or death. *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 87 (Tex.App.-Houston [1 st Dist.] 1996, writ denied). However, the Workers' Compensation Act does not prohibit an action for exemplary damages based upon an employer's gross negligence or intentional tort. *Id.* (citing TEX. LABOR CODE ANN. § 408.001(b) (Vernon Supp. 1996)). Indeed, "[t]he Act ... specifically provides for a cause of action against an employer whose gross negligence or intentional act causes the employee's death." [4] *Id.* at 88; *see also Universal Services Co., Inc. v. Ung*, 904 S.W.2d 638, 639–40 (Tex. 1995) (deceased employee's family's claim for punitive damages because of employer's gross negligence not preempted by the Workers' Compensation Act); *Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 853 (Tex.1995) ("Article 16, Section 26 guarantees the remedy of punitive damages ... when a wrongful death beneficiary otherwise possesses a cause of action for compensatory relief...."); *Rodriguez v. Naylor Industries, Inc.*, 763 S.W.2d 411, 412 (Tex.1989) (Workers' Compensation Act does not bar claims for intentional torts); *Del Industrial Inc. v. Texas Workers' Compensation Ins. Fund*, 973 S.W.2d 743, 746 n. 5 (Tex.App.-Austin 1998, rev. granted) (surviving spouses or heirs of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence may seek exemplary damages).

Notwithstanding these constitutional and statutory underpinnings, Defendants vigorously assert Mr. Frias's failure to provide "notice" of his intention to retain common law or statutory remedies pursuant to section 406.034 of the Labor Code waived his *and* his surviving wife's and children's right to maintain their respective causes of action for gross negligence and intentional injury. *See* TEX. LABOR CODE ANN. § 406.034(a) (Vernon 1996). A similar argument was advocated and rejected in *Jones v. Jeffreys*, where the court held:

> Our Constitution, art. 16, section 26, provides as follows: "Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."
>
> Art. 8306, R.C.S., sec. 5, provides the procedure under such Constitutional provision for the recovery of exemplary damages in a proceeding under the Workmen's Compensation Act.
>
> Under such constitutional provision and the Workmen's Compensation Act, *where an employee has elected to come under the Act by not giving the notice* required by sec. 3a of art. 8306, R.C.S., *exemplary damages may be recovered by the parties named in the Constitution*, but only where the injury results in the death of the employee.[5]

---

**4.** The Act provides:
(a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.
(b) This section *does not prohibit* the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an *intentional act* or omission of the employer or by the employer's *gross negligence*.
....

TEX. LABOR CODE ANN. § 408.001 (Vernon 1996) (emphasis added).

**5.** In 1993, the Texas legislature codified these statutory provisions in the Labor Code. *See* TEX. LABOR CODE ANN. § 406.034 (Vernon

244 S.W.2d, 924, 926 (Tex.App.-Dallas 1951, writ ref'd) (emphasis added).

Here, the record shows that Mr. Frias elected to be protected by the workers' compensation laws. Mr. Frias's election to be so protected did not, however, waive Plaintiffs' right to maintain a cause of action for exemplary damages. *See id.* In other words, exemplary damages may be sought from an employer by a deceased employee's surviving spouse or heirs of his body, notwithstanding the employee's election to come under the workers' compensation laws by not providing written notice under section 406.034 of the Labor Code. *See id.;* Tex. Labor Code Ann. § 406.034 (Vernon 1996).[6]

Consequently, it was error for the trial court to grant summary judgment in favor of Defendants on the ground that the Workers' Compensation Act abrogated Plaintiffs' causes of action for gross negligence and intentional tort. *See Smith,* 927 S.W.2d at 88. Plaintiffs' first point of error is sustained.

**C.**

In their second point of error, Plaintiffs contend that the trial court erred in granting summary judgment in favor of Defendants on the ground that Defendants' summary judgment evidence negated an essential element of Plaintiffs' causes of action for gross negligence and intentional tort, relative to Mr. Frias's exposure to benzene while working.

As previously noted, in review of an appeal from a summary judgment, the evidence favorable to the non-movant will be taken as true, and all doubts will be resolved in favor of the non-movant. *See Naylor,* 763 S.W.2d at 412–13. In this case, summary judgment was proper only if Defendants established as a matter of law that Plaintiffs' damages were not the result of Defendants' gross negligence nor intentional conduct in connection with Mr. Frias's benzene exposure. *See id.* at 413.

### Gross Negligence

Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 41.001(7) (Vernon 1997). Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *Id.; Universal Servs. Co. v. Ung,* 904 S.W.2d 638, 641 (Tex.1995); *Moriel,* 879 S.W.2d at 22–23. Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *Id.; Ung,* 904 S.W.2d at 641; *Moriel,* 879 S.W.2d at 22. Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omis-

---

1996); Tex. Labor Code Ann. § 408.001 (Vernon 1996).

**6.** *See also* David W. Robertson, *The Texas Employer's Liability in Tort for Injuries to an Employee Occurring in the Course of the Employment,* 24 St. Mary's L.J. 1195 (1993). Professor Robertson noted that "[t]he statute and the cases contemplate that the exemplary damages action will lie although workers' compensation benefits have been sought or paid. There is no election of remedies problem." *Id.* at 1212. He also observed that the

Texas Workers' Compensation Act "implements the application of [Article 16, Section 26 of the Texas Constitution] against subscribing employers by providing in [section 408.001(b) of the Labor Code] that: The exclusive remedy provision does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence." *Id.* at 1205.

sions demonstrated that it did not care. *Id.; Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex.1993). Circumstantial evidence is sufficient to prove either element of gross negligence. *Id.; Moriel,* 879 S.W.2d at 22–23; *Wal–Mart Stores, Inc.,* 868 S.W.2d at 327.

In their second amended motion for summary judgment, Defendants endeavored to establish as a matter of law that they were not grossly negligent because, during Mr. Frias's employment, they took precautions to protect him from exposures to benzene, including (1) monitoring the workplace for benzene exposures, (2) providing warnings and instructions, (3) requiring the wearing of protective equipment, and (4) offering a medical examination to protect his general health and a specific program to detect and deal with benzene exposures. Defendants argued in their motion that these four measures showed, as a matter of law, that they were not "consciously indifferent" to Mr. Frias's rights, safety, and welfare.[7] It is clear, then, that in their second amended motion for summary judgment, Defendants sought to negate only the second element of gross negligence; that is, the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *See Mobil Oil Corp.,* 968 S.W.2d at 921.

Plaintiffs responded to Defendants' summary judgment evidence by arguing that Defendants failed to show that they followed their own benzene safety policies, that they responded to known benzene safety hazards, or that they implemented work-practice and engineering controls to protect against benzene exposure. In support of their response, Plaintiffs attached an affidavit by Dr. Vernon E. Rose. Dr. Rose is an industrial hygienist and is a visiting professor at the University of Texas School of Public Health. Dr.

Rose based his opinion upon his knowledge, 34 years' experience and training as an industrial hygienist, his review of Defendants' documents, including minutes of safety meetings, internal memoranda and company policies and procedures with regard to benzene exposure. Dr. Rose also based his opinion on his review of deposition testimony given in this case by Defendants' employees, supervisors, corporate representatives, and corporate hygienists, and his review of Defendants' training manuals, a plant tour of Defendants' refinery, and other documents related to benzene exposure within Defendants' refinery. Dr. Rose opined:

> In reviewing the information listed above, it is clear that the Defendants, through their participation in groups such as API and other industry organization, had knowledge of the life-threatening dangers of benzene well before Jesus Frias was employed by them. Furthermore, it is clear from the deposition testimony given in this case that the Defendants did not follow their own internal policies and procedures for protecting employees from the dangers of benzene exposure. Finally, the benzene monitoring, although inadequate, clearly should have demonstrated to the Defendants a need to drastically change the actual work practices of their employees with respect to benzene exposure.

> Therefore, it is my opinion the levels of benzene exposure experienced by employees such as Mr. Frias at the Refinery Docks posed an extreme risk of serious and life-threatening injuries such that the Defendants demonstrated a conscious indifference to the health, safety and welfare of Mr. Frias and other workers similarly situated. The Defendants disregarded the dangers posed to Mr. Frias to such extent that

---

7. Our Supreme Court has held that "the fact that a defendant exercises some care does not insulate the defendant from gross negligence liability." *Mobil Oil Corp.,* 968 S.W.2d at 923–24 (citing *Moriel,* 879 S.W.2d at 20).

they are guilty of gross negligence.[8]

"Summary judgment is improper if the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case." *Huffine v. Tomball Hosp. Auth.*, 979 S.W.2d 795, 801 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *see also Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989) (if the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is inappropriate); *Brandes v. Rice Trust, Inc.*, 966 S.W.2d 144, 149 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (defendants failed to meet burden of proof because the credibility of the summary judgment affiants was a dispositive factor in the case); *McClellan v. Ritz–Carlton Hotel Co.*, 961 S.W.2d 463, 465 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Here, the credibility of the respective affiants is likely to be a dispositive factor in the case. We hold, therefore, that there is a genuine issue of material fact concerning whether Defendants' conduct was tantamount to gross negligence. *See McClellan*, 961 S.W.2d at 465.

### Intentional Injury

"The fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury." *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985). "The Restatement Second of Torts defines intent to mean that 'the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 8A (1965)).

Issues of intent and knowledge are not susceptible of being readily controverted and are generally inappropriate for summary judgment. *RRR Farms, Ltd. v. American Horse Ass'n, Inc.*, 957 S.W.2d 121, 132 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). "Summary judgment should not be granted when the issues are inherently those for a jury, as in cases involving intent." *Id.* Further, the determination of whether Defendants intended to injure Mr. Frias, as defined in *Reed Tool Co., supra*, rests upon the Defendants' credibility. *See id.* Consequently, it is an issue for determination by a fact finder. *See id.; see also McGee v. McGee*, 936 S.W.2d 360, 366 (Tex.App.-Waco 1996, writ denied) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374 (Tex.1993) (whether a person intends to injure another person is ordinarily a question of fact uniquely within the realm of the fact finder)).

The trial court's summary judgment on this claim on the basis that Defendants negated at least one, essential element of Plaintiffs' claims of gross negligence and intentional injury was improper. *See RRR Farms, Ltd.*, 957 S.W.2d at 132. Plaintiffs' second point of error is sustained.

The summary judgment is reversed and the cause remanded to the trial court.

8. Although not briefed, Defendants' counsel advocated during oral argument that Dr. Rose's affidavit was not filed until after the summary judgment was granted and, therefore, should not be considered. This contention is without merit. The record clearly indicates that Dr. Rose's affidavit was filed, together with Plaintiffs' first response to Defendants' second motion for summary judgment, on September 20, 1996. The trial court granted Defendants' second amended motion for summary judgment on March 19, 1997. Defendants' counsel also argued during oral argument that Dr. Rose's affidavit was "conclusory." This contention was not briefed by Defendants' counsel. Issues not separately briefed are waived. *Houston Endowment, Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156, 163 (Tex.App.-Houston [14th Dist.] 1998, no pet.).